The position of Ms. Peter-Pelican and Emmy, for ease of reference, on this particular appeal is basically as follows. She is attempting to protect a jury verdict for lost wages in the amount of approximately $55,000. That's the essence of her situation. These wages run from a period of October 26, 2000 to April 8, 2002. They are basically set forth in the jury's response to interrogatory number six. As a result of the district judge's action, that particular award was vacated. Our position on that is as follows. One, that the CNMI government did not object to the submission to the jury in accordance with Rule 51 with respect to that particular rule, namely the covenant of good faith and fair dealing. The government's position has been no contract, no covenant of good faith and fair dealing. Our position is simply that we have PSS&R regulations. Those regulations clearly provide, implied within them, a covenant of good faith and fair dealing. The problem, of course, is that government employment is not by contract. It's by appointment. That's a longstanding rule. I wasn't hired. I was appointed. That's true. You must have been in the military. I mean, if you're good in the military, you don't have a contract. You're not a mercenary. You get a commission or an appointment if you're a non-commissioned. So there's no contract involved to which a covenant of good faith and fair dealing can attach. It's a contract concept. It may have been in the beginning a contract concept. In fact, not may, it was. There's no question about that, particularly with respect to at-will employment. However, certainly the state of California, as well as other states, have cut through that situation. In Camerer, we have so many other things. No argument there. The court there said it paid 613 in part. Simply state it. Which case? Camerer. Yes. Two cases, actually. Venezuela v. State of California and Camerer v. Fresno County, both cited at page 11 of our opening brief. The court stated in part. Simply state it. The state civil service system requires good faith and fair dealing in the resolution of the inevitable conflicts inherent in the employment relationship and provides remedies to the agreed employee for redress of wrongs. Basically, the other side of this coin, Your Honor, with respect to public employment, is the government stating to this court that it does not have to deal in good faith with its employees, that it does not have to deal fairly with them, particularly in the instant situation. Well, but that is not the necessary implication because there are due process rights that go along, and there could be statutory rights, rights created by regulation, which give or create a requirement of fairness, and you've got your 983 claim here, so it's not like if you don't have fairness guaranteed by the covenant of good faith and fair dealing, that means that there are no protections at all. The question is, do you get this particular kind of protection, the kind of protection that grew out of contract and is sort of tied up with contract? I don't know how much farther you can get than a requirement of due process, what a covenant of good faith and fair dealing gives you beyond that. Well, Your Honor, particularly in the factual situation which was presented in this particular case, Amy Pallack can jump through every administrative hoop set up by the government. She went through her own agency. She went through the Civil Service Commission. At every stage of this proceeding, she prevailed. The government appealed their own determinations. She prevailed again. The government still refused to reinstate her as per the government's own determinations in civil service. We're seven years into this program now, Your Honor, and if there is not such an implied covenant to deal fairly, why should she have to go into court every single time from the superior court, administrative agencies, and here we are in Honolulu in the Ninth Circuit Court of Appeals trying to simply enforce what the government said and done? The long answer to that is 600 years or more of common law that says you can't sue the some extent modified by statute, but we still have a basic regime of sovereign immunity and only to the degree by which the sovereign allows itself to be sued is a cause. And in the name of that, there are all sorts of injustices that have been committed over the centuries. It's just the way it is. So when it comes to dealing with the government or getting recovered from the government, the presumption is not, as you would in an argument in relation to individuals, you know, fairness requires this. The question is you have to point to some provision where the sovereign has said this is where I can be sued and this is where I take on additional responsibility. Now, you have a 1983 claim here. Why is it not enough? Because the jury came back with an award for lost wages. The 1983 claim was against Thomas Camacho in his capacity as Executive Director of the Disabilities Council. That was damages against him. The jury, though, determined that she also should receive lost wages, which the administration, through its Civil Service Commission, awarded her, but the government refused to give it to her. Now, I thought the government at some point said, look, take the money. No. That was during trial, wasn't it? I mean, up to the point when they offered to reinstate her. That's correct. But then it still went to the jury on from that date to April. That's correct, Your Honor. They gave her part of the money. They conceded that part of the money. However, of the remainder of the funds, they refused to turn over to her, which were Civil Service Commission said she should receive. All right. Counsel, I have trouble with the verdict form. Now, if the jury did not award back wages under Question 4, how can we conclude that the jury intended to award such wages under Question 6, which addressed the breach of covenant of good faith and fair dealing? That was addressed during the Rule 50 motions, and this is the problem. The jury clearly came up with this $55,000 based upon the testimony adduced at trial, that this was the balance of the wages due. The problem was, in reading the jury verdict form, even after three lawyers had gone over it, they decided that, well, we wouldn't answer Number 4 because we can't find for the plaintiff. We only answer Interrogatory 4 if we find for the defendant. But we didn't find for the defendant, so we're going to skip that one and put our resolution of this problem, namely the lost wages, into jury verdict form. But then the only way you can get to that is with the affidavit of the juror. I think, Your Honor, just on the face of the jury verdict form, they come up with the wages, and they put it in Number 6, because that's where they thought it should go. Because we're not trying to alter the amount of money or the format or anything. We're just saying they put it in the wrong place. But it's equally plausible that they took the wages as a measure of damages and put them in the right place. That's why we have an alternate argument with respect to the good faith and fair dealing. Our argument with respect to the jury verdict under Rule 60A, and I would commend the Court to not only its own Bateman case, but the case that was cited in Bateman, which is the 1924 Connecticut case, which was referenced as a good model. And the language in that particular case, in part, says as follows. With respect to clerical error, but the evidence of the jurors is offered only to show a mistake in the nature of a clerical error which happened after the deliberations of the jury had ceased. This is critical. And they had actually agreed on their verdict. The error consisted not in making up their verdict on wrong principles or on a mistake of facts, but in an omission to state correctly in writing the verdict to which they had, by a due and regular course of proceedings, honestly and fairly arrived at. They arrived at a verdict. The dollar figure is precisely what we wanted. We're happy. We pack up and go home. That's on the jury verdict form. Unfortunately, as is obvious from the affidavit, they misunderstood where they were supposed to put this $55,000. Hence, it ended up in six rather than seven. What would you be, what exactly are you asking us to do that would make you completely satisfied? In the first, what are all the steps that you need us to do so that at least we can do to satisfy what you think should be done? I think the simplest and most straightforward way to handle it, Your Honor, would be to instruct the district court to put that $55,000 in the interrogatory for where it belongs, that's the lost wages, and it's over with. That's already been awarded by the Civil Service Commission. It was simply the way the interrogatory number four reads. You find for plaintiff in the amount of blank dollars. It's very simple, straightforward. But is that on the basis of the juror affidavit? If so, what do you do with Federal Rule of Evidence 606B? That Federal Rule of Evidence is designed to prohibit people who come in and try and impeach a jury verdict. We're not trying to impeach this verdict. We're happy. If the judge hadn't granted that Rule 50 motion, we'd pack up and go home. But you're trying to say that the jurors meant to put it in another box. So that does go to the jury thought, that what they were doing is awarding damages for the back wages, is what you're saying. Even though they didn't put it in that box, it's that amount, but they didn't put it in that box. Only the thought process, only to the extent that the jury verdict format gave an instruction that, as I say, three lawyers seem to think were clear, was clear. The jury apparently did not. And put it, what they wanted to award, in a different place because they thought they were precluded from putting it in interrogatory number four. And that's the problem. I would like to ask you a question on the qualified immunity. In terms of, obviously, I would state from the out get, Mr. Camacho going back and changing, doing evaluations when they hadn't been done before to justify. I mean, I think that's employment law 101. I mean, it's certainly despicable conduct. And I don't think that we condone that on any level. But what I'm struggling with is the way that you frame your claim, as I understand it, is the violation was in terms of her pre-termination due process rights. And it seems to me, when you're focusing there, it seems that they followed exactly what the handbook was, as far as that goes. And that the committee did what it was supposed to do. It reinstated her. And so, if that's the constitutional right that we're talking about, I'm struggling with, well, I don't in any way condone what Mr. Camacho did. In terms of, you know, she got her letter, you know, she got the hearing that, you know, everything was followed exactly by the book. You know, how was she denied that constitutional right? Or, if you look at Saussure, which I'm assuming we have to look at the prongs of that, correct? Okay. You know, I want, you know, I want to, but on the other hand, I'm struggling with that. Your Honor, submit that the processes weren't precisely followed. For instance, she was not given any pre-termination hearing. She was simply terminated on January 8th, after these little events that had taken place with respect to the, what I would style the bogus employment rating that were issued by Mr. Camacho. She had a hearing later on, about a year later, and ultimately a decision came out in her favor. And of course, there was a re-hearing requested by the government, and the decision again came out in her favor. In the meantime, these bogus employment ratings had been put aside by the Civil Service Commission. So, at every stage, she had prevailed, but nothing happened. The government didn't do anything. They didn't react on it. Okay, that's the government, but as to Mr. Camacho, in terms of his qualified immunity, what, you know, it seems to me that he followed the manual. You know, I mean, not, certainly not changing the employment things, but in terms of sending the letter out, then the hearing, and there's, I think there are parts quoted exactly what you have to do. As far as Mr. Camacho goes, I submit he did not. For instance, the Court has already acknowledged the two preliminary retroactive employment ratings that were simply bogus. He also, prior to that time, failed to provide for a hearing. And that's critical in any sort of a due process situation with employment. How was the qualified immunity claim raised in the District Court? Well, it was raised in the answer, okay, for starters. And it was litigated in the Rule 50 motion that was filed post-judgment. But they didn't do it before trial. What was it? That I would have to, I'd have to check the record on that. In any event, if it was raised before trial, it was denied. Right. And that's not what it's about. But my specific, more specific question is, was the qualified immunity issue presented to the jury? No, not in the sense of arguing to the jury. I don't recall asking the jury to rule on it. There was no, there's no verdict. So obviously it could not be presented to the jury, whether, because this is obviously affirmative defense and has to be presented to the jury and has to be established by Mr. Camacho. So why wasn't the whole qualified immunity issue waived by not being presented to the jury? Well, I think it would be if it hasn't been presented to the jury and the jury has a right to rule on it. Because it's a set of facts, did or didn't do A through Z. There's an absence of law on this, on this particular issue, but it's a vexing question that keeps coming up. We all know what happens if you raise a qualified immunity claim at summary judgment. There's lots of law about that. There's not much law what happens once the claim survives summary judgment, although it's not raised, and you get to the jury. Do you submit that claim to the jury or can you raise, can you go to verdict and then raise it by 50, 50, 50 motion after that? But there's a surprising amount of law on the point. But in this case, what you're telling me is that this was not presented to the jury. It was not. It's not on the jury. You've got a little short of three minutes left. I would like to reserve time, Your Honor, if it pleases you. Go ahead and do it, unless one of my colleagues has an immediate question. OK. We will next hear, I mean, we'll hear from the appointing counsel. Mr. Sachs, you've been listening patiently. Thank you. May it please the court. My name is Benjamin Sachs. I'm the assistant attorney general for the Commonwealth of the Northern Mariana Islands. It's a pleasure to be here today. I think that I want to pick up where your question has come to you. I would have preferred that. Actually, the court has made two historic visits to the Northern Mariana Islands during the time I've been there. I was unfortunate to be one of those visits, but it's always a pleasure to visit SACA. It was kind of one of the primo assignments that everyone would like to get. Well, I don't blame you. I totally agree with you. It's good to be here. So go ahead. I'm going to pick up where where you left off on the qualified immunity issue. Judge Kaczynski pointed out that there really is not, there's a paucity of cases on on who decides. If the issue of qualified immunity is not resolved before trial, who decides the issue finally? Is it the jury who decides or is it the court that decides it? In this case, it was never presented to the jury. There was no qualified immunity instruction. And in the Ninth Circuit rules, there's no qualified immunity instruction. Instead, there's there's some notations that to the effect that it's unresolved. So it wasn't presented to the jury and it wasn't decided by the jury. Why didn't your client waive that then? It's a question that's not resolved by summary judgment. Your court went to trial. The trial fact normally gets to decide all issues, affirmative defenses or case in chief and so on. One question, the trial fact is not asked to decide on the subject of proper instructions is qualified immunity. Why is that issue gone? Our contention is that it's a question of law for the court to decide. It's not for the jury to decide. The contours of the right, it's not for the for the jury to decide whether or not that right is. Give me one other issue that's like that, that there are lots of things you decide in summary judgment, but, you know, but they are essentially jury questions where you say there's no disputation of facts or the court can decide as a matter of law. Well, give me one other question in the law that you get to the jury, you know, you're there at jury trial. You say, well, I'm going to tell the jury about it. We're going to let the jury go through the whole exercise of hearing the case, deciding every other issue. And then if we don't like what they say, we're going to try to take it away from them by representing the judge. I don't know of a single other issue like that. The immunity of government officials from suit based on the consequences of their discretionary acts occupies a unique place in the law. That's why the law. Well, it's unique at the summary judgment stage because the Supreme Court has told us it's the same in other cases. You don't want to put them to the to the to the burden and inconvenience and time loss of appearing at trial. That is a big deal. But you're past that point. You're going to have a trial anyway. And I don't. What are the policy or other reasons for at that point saying you are not going to tell the jury about this? It's a question of fact, in part. I mean, whether whether this qualified immunity is a question of fact and law, it's not a question of law. It's a question of law as molded by the facts. We think that the nature of the inquiry is defined by this court and by the Supreme Court makes it properly resolvable only by the court. The court has to decide if it's a tribal issue, then that means there's facts that are disputed. And so I mean, if facts are disputed, that's not that's not a straight issue of law. And you've got the two prongs of Saussure, which it seems to me that a jury could be asked those questions. Actually, Judge, we we don't agree with that. We think that the whether or not a right is clearly established is not something properly resolvable by the jury, because it really depends on a review. Well, maybe that's the second prong. But the first prong, if there's, you know, in asking your co-counsel, I was saying, well, didn't she get all her pre-termination due process? I mean, that they followed and, you know, they're saying she didn't because they they didn't give her a hearing for a long time and they terminated her without certain things. And your position is obviously he went right by the handbook once. And then when she got her hearing, they did what was supposed to occur and they reinstated her and all of that. We think that the first part of the inquiry may well be properly resolvable by the jury, and that is based on all the the totality of circumstances, was there a constitutional violation? But that's not all that it takes. There also is the prong that was that right clearly established at the time of the acts in question. And and that is a essentially legal determination for the court. It would not be appropriate for a legal expert to testify. But even if we accept that, that the first question didn't go to the jury. So our factual disputes aren't resolved. We don't know. We don't know what pre-termination due process she got. Actually, we think that that the the real question depends on how the right that's claimed to have been violated is formulated, how the constitutional due process right is formulated. That is the key. Am I correct in remembering that the district court found that Camacho manufactured negative performance evaluation? That's what the the court found, that the jury had made that as part of the basis of its determination of a civil rights violation and that there was sufficient evidence. And for purposes of this appeal, we're not contesting that. Our contention, though, is that there was no right to due process before an adverse performance appraisal and that there was no right that was clearly established in 1997 or 1998 when Mr. Camacho acted adversely to to Ms. Peter Pelican, you know, simply because there may have been a violation. So which prong are you claiming he prevails on? Actually, we are contention is there is no no constitutional violation. Actually, as we think that the right that's claimed is properly formulated. We don't think that that right exists. And we don't think that any such right was clearly established in 1997 or 1998. What do you do with the Supreme Court's case of who Bush's pals are where they say you don't need a case in point. If the content is bad enough, it's such that government officials know they shouldn't engage in it. You don't have to have a specific case in point. That was my next question. It was great months. This is a classic. This is a classic law school civil procedure issue. You know, there are questions of fact and questions of law. And there there is a spectrum. Well, let me finish my question. You don't need to have a big lesson in the Supreme Court case law to know you don't falsify performance evaluations. You don't make them up. And I understand the dispute. There was a dispute at one point as to whether, you know, these were genuine or not. But the jury ruled on that. The jury found that he fabricated them. And, you know, you only have to go back to 1974 or so and Watergate. And, you know, if you have to go that far back, but certainly it's pretty clearly established that erasing tapes and erasing things and modifying reports and falsifying government documents is not is not permissible. So this is not this is not a mystery. First of all, judge, I think in defense of Mr. Camacho, it needs to be pointed out that there was a lot of conflicting evidence that was presented. He lost and he lost. But the fact that he had a lot of good arguments in his favor doesn't help him. But now when I pass the jury, he lost. We now see the world through that lens and through that lens. He is a fabricator. He is a guy who falsifies documents, maybe in real life. He's perfectly nice and honest. But for our purposes, it doesn't matter. We view the world through the lens of the jury verdict. That's right. So, you know, this is not nothing personal against Mr. Camacho. Well, no, I'm willing to presume that the jury jury was wrong about this, but not obviously so long as the verdict not be supported by the record. So we have to sort of talk about it as as as as as it appears based on the jury verdict. And once you do that, I don't know what what's left. Not every violation of state law, particularly the Civil Service Act and regulations, is automatically elevated to constitutional. Of course, not every, but falsification of documents is. I don't think there's anybody in government today that would presume that going back and falsifying or making up stories about somebody not getting fired would be permissible. And I think you line up a thousand government employees from all levels of government, state, federal, commonwealth, and you ask them this question, you would get a thousand answers and also would say no. We think it goes to the bias of Mr. Camacho as part of the pre-termination process. Was the issue framed in whether she got her pre-determined pre-termination due process rights? Is that that's that was the claim that she didn't. That was the 1983 claim that you need to take a look at the complaint. It was never amended. It's the first cause of action, and it was a claim for violation of due process and equal protection. And as we understood it and as it was presented to the jury, it was a question of whether or not she was deprived of a property right and continued employment without due process. There was no contention made that there was insufficiency of post-termination process. So we think that the focus is on the pre-termination process. In Loudermill, the court indicated that some kind of hearing is necessary and some kind of notice is required, and we think that there was uncontradicted evidence that there was compliance with the civil service rules and regulations in that regard. Well, what about I think co-counsel said something about if they did it, it was a year later. I mean, there could be, you know, obviously doing something, you know, I mean, there could be a timely factor there. Yes. Actually, I don't think that there was any contention that was presented to the court or the jury with respect to the inadequacy because of untimeliness of the decision. Incidentally, the decision that the Civil Service Commission reached didn't go to the merits of Ms. Palikin's performance. The question was solely whether or not Mr. Camacho had the authority to terminate her at all. And bear in mind that he was the executive director of the Governor's Developmental Disabilities Council, and under the DD Bill of Rights statute, the federal law, generally speaking, it was up to the executive director to hire and fire staff of the council. And that had been the practice that had been followed in the CNMI for years. But let me just – The issue – I just fail to see how can it be fair to take away the job of a civil service employee by making up stuff? I think that there is merit to the contention that it violated the civil service rules. The issue really is, was Ms. Palikin entitled to a pre-termination process by someone other than Mr. Camacho, or was she entitled to a pre-termination decision maker that was untainted by bias of any kind? And the answer has already been resolved in the circuit. And the court looked at the Duchesne case in the Sixth Circuit, which was an in-bank decision, and agreed with that court that – there's a panel decision in the Walker case – agreed with that court that as long as there is constitutionally adequate post-termination process, which was received in this case, then there is no right to an impartial pre-termination decision maker. So that's what we believe was the right that was claimed here, her right to have an impartial pre-termination decision maker. And we don't believe that that right existed. It doesn't exist, and we don't think it was clearly established at the time, in 1997 to 1998 when the events in question occurred. I see I'm running out of time. I think I'd like to get to the state law issues and the Rule 606 issues. I think that I'll address the second of those two first. The issue here is really whether or not a jury verdict can be impeached on the basis of a juror's declaration when that declaration indicates that the jury misunderstood or misapplied the jury instructions. And in this case, we don't believe that that is the sort of clerical error that, you know, constitutes any sort of exception to Rule 606B. We think that the court – this is an area where, unfortunately, there is not, based on my research, any Ninth Circuit law that I found that guides the court. There are, of course, U.S. Supreme Court cases construing Rule 606, but there are no Ninth Circuit cases dealing with the interplay between Rule 606 and Rule 60. Your counsel for the other side, it's his position that you can tell that he's just looking at the verdict, that we don't, you know, accepting the fact that, let's say that, you know, getting into what the jurors were thinking and all of that, that that would not be properly admissible. But he says you can just look at it and tell. What's your answer to that? Our answer is that that's not the case, that it would be necessary to resort to extrinsic evidence in order to determine that. The jury was instructed about what comprises damages and the elements of damages as well as the elements of liability. We have to presume that they understood the instructions that were given and that they followed them. And they indicated what the actual damages were on both the federal claim and the state law claim. And the damages that they indicated as being attributable to the state law claim are not unambiguously referable to lost wages. So our contention is that there's absolutely no way that you can just by looking at the face of the verdict form discern, you know, any intent on their part that it should have been under the federal claim and not under the state claim. Now, the state claim, it's our position, is not properly maintainable. Under principles of federalism, this court is asked to determine what the law of the Commonwealth of the Northern Mariana Islands would be. There are no Commonwealth of the Northern Mariana Islands Supreme Court cases that address a claim for breach of an implied covenant of good faith and fair dealing on behalf of a civil service employee. That's why the court noted, the district court noted in its decision that there was absolutely no authority that would support such a claim under Commonwealth law. That's why resort is had to cases in California. The cases in California. Well, what about, I think he also makes an argument that the attorney submitted these to the jury and there was no objection. I think you've waived that argument. Well, first of all, it wasn't waived because because as I pointed out in the brief, there actually was a statement direct by counsel that that those claims were not properly submitted to the jury. So so that that right was preserved. There was no waiver on the part of the Commonwealth or any of the defendants to to object as a matter of law to the legal sufficiency of that claim. And it was raised. So. So in this case, the court had to decide whether or not that's a that's a cognizable claim under state law. And the court properly determined that it's not a cognizable claim under state law because for the same reason that was indicated by Judge Kaczynski, there was no contract. It is it is civil service rules and regulations that determine the aspects of employment of a civil service employee. And there was, in fact, no contract. And nor could there be. So what is the status of the Civil Service Commission award or ruling in this case? Some of it has been paid. Some of it has not been paid. My understanding is that that by now it's it's been fully paid according to the terms. It was there was an agreement to pay it in installments. And my understanding is that those installment payments were accomplished. So. So the so the requirements of the Civil Service Commission's order were were complied with. This was before the verdict or after the verdict or the jury. The jury was tasked. The jury was was instructed on the results of the Civil Service Commission's decision. And there was there were factual issues, including the question of whether the award, whatever you call the what the Civil Service Commission ruled an award, maybe that it was had it paid or not been paid. I'm there were some there's some implication here that the jury was told that the defendants were defying the commission. Disregarding the ruling against them. They lost and they're not paying up. There was there was a factual issue because Miss Peter Pelican didn't work during that period of time. And there was a it was just as the jury was instructed. It was the the Commonwealth's contention that she had been reinstated and was afforded an opportunity return to work. She said that there were conditions on her reinstatement that were unlawful or unacceptable. When you started the trial, my understanding is that that whole issue was up in the air. And it was right before it was during the trial that the Commonwealth said, OK, we'll pay you up until the time that we reinstated you. And then the jury was so instructed that that period of time was not. But when you started the trial, it was my understanding that back wages was totally. You were contesting that. No, the my understanding, judges, is that's not right. It was just during that period from 2000 to 2002 that that's what was an issue. And that's what was presented to the jury on the state level. That's what was presented to the jury eventually. But when you started the trial, had the Commonwealth made that concession yet? I don't know my my understanding. It happened after the trial started. And then I think that that was among the issues that was raised by the pleadings. And I think that there were claims asserted under both both the the 1983 claim and the state law claim for the same concerning the same. Well, the Commonwealth certainly hadn't paid her a dime when the trial started. I think that that's not correct. I think so. But my understanding is that that subsequent to the trial and in fact subsequent to the verdict and the judgment, there were arrangements made with respect to payment of of the award made by the Civil Service Commission. So so those were not those were not resolved either prior to trial or after trial. Thank you. Thank you. I think you have just five minutes. Has the civil service award been paid in full? No, Your Honor, it has not been. That's what we're talking about. I think we need a jury here to resolve this factual dispute. Please. No, the Civil Service Commission awarded full back pay and allowances. There was an offer of settlement early on prior to trial to receive less than that. Miss Palachin declined that offer. We went up into the trial sequence that is selecting a jury and whatnot. At that time, the government agreed, OK, we'll pay up to this point. But after this point, the point being the time of the offer, we're not going to pay. So after the trial and for a period of some months afterwards, there were partial payments made upon this civil service situation. The Civil Service Commission determined that there was no authority to fire Emmy Palachin. Now, that is part of the qualified immunity standards set out in Harlow Fitzgerald. You've got to know your own powers. And the Civil Service Commission came up and said, well, you couldn't do this. You have no authority to do this. The government appealed this through the local court system in the Superior Court, and they lost. But primarily because they followed up the appeal process. But they lost. That's over with. It's finished. It's established, I think, for this court and for the district court. With respect to the sequence of events on the qualified immunity situation, subsequent to the presentation of plaintiff's case at trial, a plaintiff moved, Emmy moved, to amend the complaint to conform to the evidence. This was granted by the district court. So as far as we're concerned, everything that went in both pre, shall we say, civil service determination, as well as post-civil service determination with respect to the conduct of Mr. Camacho is in, has been properly pled, was before the court, ended up before the jury. With respect to the government's argument that evidence rule 606 relates to misunderstanding the jury instructions, I submit that is not the situation here. We are not talking about jury instructions. We are talking about information on the jury verdict form as to where you put your results. That is what we are talking about. Finally, I think that ends my time. Thank you very much. Thank you, counsel, for a very helpful argument. This is how you stand submitted. Which argument in case of United States versus. Remember.
judges: Dw Nelson, Kozinski, Callahan